**In re STRUCTURE & DESIGN, INC., Debtor.**

**Bankruptcy No. 92–21178.**

United States Bankruptcy Court, D. Maine.

June 29, 1993.

Ronald D. Bourque, Bourque & Clegg, Sanford, ME, for debtor.

Stanley F. Greenberg, Portland, ME, for petitioner.

### *MEMORANDUM OF DECISION*

JAMES A. GOODMAN, Chief Judge.

This Court must decide whether to dismiss this involuntary bankruptcy petition for failure of the requisite number of petitioners to file the petition in accordance with 11 U.S.C. § 303. The simple, uncontested facts are taken from the parties' joint stipulation and the record of this case.

Dragon Products Company ("Petitioner") filed this involuntary Chapter 7 petition pursuant to § 303 against Structure & Design, Inc. ("S & D") on November 25, 1992. Petitioner holds a non-contingent, undisputed claim of $6,896.19 against S & D, and was the sole petitioner at the time of filing.[1] As its sole defense, S & D has al-

---

**1.** Subsequently, two additional creditors moved to join the involuntary petition—American Arbi-

leged that it has twelve or more creditors and that the petition should be dismissed due to Petitioner's failure to comply with § 303(b), which requires an involuntary petition to be filed by at least three qualified creditors if the debtor has twelve or more creditors. S & D in fact had approximately one hundred creditors at the time of filing.

Prior to filing the petition, Petitioner's counsel contacted his client's credit manager to inquire of his knowledge of the number of S & D's creditors. The credit manager indicated "that he was unaware of any such claims against the debtor, other than that of [the Petitioner.]" *Stipulation of Fact*, Dkt. # 18 at 1. This was the only effort taken by either Petitioner or its counsel to verify the number of S & D's qualified creditors. While unaware of the specific number of creditors, Petitioner and its counsel both believed there were fewer than twelve.

There is no allegation that Petitioner engaged in bad faith or fraudulently attempted to confer jurisdiction on this Court by filing the petition alone, hoping to later remedy the deficiency with intervening creditors; nor does S & D claim that Petitioner knew the large number of existing creditors. Rather, S & D contends that the petition should be dismissed because Petitioner and its counsel could have easily discovered the large number of creditors, and therefore should have known that there were twelve or more.

F.R.Bky.P. 1003(b) anticipates this very situation:

If the answer to an involuntary petition filed by fewer than three creditors avers the existence of 12 or more creditors, the debtor shall file with the answer a list of all creditors with their addresses, a brief statement of the nature of their claims, and the amounts thereof. If it appears that there are 12 or more creditors as provided in § 303(b) of the Code, the court shall afford a reasonable opportunity for other creditors to join in the petition before a hearing is held thereon.

In this case, two creditors joined the involuntary petition within a reasonable time. Both creditors intervened within fifteen days of S & D's answer wherein it first asserted its defense and at least three weeks before S & D had even filed its list of creditors.

■ Despite creditors' general right of intervention pursuant to § 303(c) and the language in Rule 1003(b) which contemplates joinder of additional creditors in all circumstances, many courts have carved out a "bad faith" exception. "While an involuntary petition may be cured after filing when a single creditor files in good faith believing the debtor has fewer than twelve creditors, a single creditor may not file an involuntary petition knowing the debtor has twelve or more creditors." *Basin Electric Power Coop. v. Midwest Processing Co.*, 769 F.2d 483, 486 (8th Cir. 1985) *cert. denied*, 474 U.S. 1083, 106 S.Ct. 854, 88 L.Ed.2d 894 (1986). Thus, if Petitioner filed this involuntary petition alone in bad faith, this Court should prevent other creditors from curing the defect.

■ However, there is no indication that Petitioner acted in bad faith. A debtor who asserts this as an affirmative defense has the burden of overcoming the general presumption that a petitioning creditor acted in good faith. *In re LaRoche*, 131 B.R. 253, 256 (D.R.I.1991), *aff'd.*, 969 F.2d 1299 (1st Cir.1992) (citations omitted); *See also In re Crown Sportswear, Inc.*, 575 F.2d 991 (1st Cir.1978). S & D has not alleged that Petitioner acted in bad faith, but has simply referred the Court to all the steps Petitioner could have taken to discover the large number of creditors.

The facts of this case closely resemble those in *Crown Sportswear*, wherein the petitioner's attorney contacted a woman in his client's credit department who had no information regarding the number of creditors. The attorney also obtained a copy of the debtor's assignment for the benefit of creditors, which also proved to be of no use in determining the number of creditors. Upon reviewing debtor's allegation of bad

tration Association on December 16, 1992 and W.W. Grainger, Inc. on December 29, 1992—

both which hold admittedly non-contingent, undisputed claims against S & D.

faith, the Court of Appeals for the First Circuit found that there was no evidence of bad faith despite the "cursory investigation" undertaken by the petitioner.

■ Here, S & D has not claimed bad faith, let alone sustained its burden of proving its existence. Petitioner mistakenly believed that S & D had fewer than twelve creditors. Although there were several simple steps Petitioner could have taken to dispel that belief, it does not change the fact that Petitioner filed the involuntary petition in good faith.

S & D's motion to dismiss the involuntary petition pursuant to Rule 1003(b) is denied.

The foregoing constitutes findings of fact and conclusions of law pursuant to F.R.Bky.P. 7052.