**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In the Matter of: EDWARD RICHMAN;
ILENE RICHMAN,
Debtors.

EDWARD RICHMAN; ILENE RICHMAN,                    No. 96-1052
Plaintiffs-Appellants,

v.

FIRST WOMAN'S BANK,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland at Greenbelt.
Alexander Williams Jr., District Judge.
(CA-95-2532-AW, BK-92-13241-SD)

Argued: September 26, 1996

Decided: January 15, 1997

Before WILKINSON, Chief Judge, LUTTIG, Circuit Judge, and
SMITH, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Smith wrote the opinion, in
which Chief Judge Wilkinson and Judge Luttig joined.

_____

**COUNSEL**

**ARGUED:** Roger Charles Simmons, GORDON & SIMMONS, Fred-
erick, Maryland, for Appellants. Morris Kletzkin, FRIEDLANDER,

MISLER, FRIEDLANDER, SLOAN & HERZ, Washington, D.C., for Appellee. **ON BRIEF:** Brenda D. Thew, GORDON & SIMMONS, Frederick, Maryland; Richard H. Gins, GINS & SEEBER, P.C., Washington, D.C., for Appellants. Jerome Ostrov, FRIEDLANDER, MISLER, FRIEDLANDER, SLOAN & HERZ, Washington, D.C., for Appellee.

_____

## OPINION

SMITH, District Judge:

This case involves a bankruptcy dispute in which the Appellants, two Chapter 7 debtors, claim the bankruptcy court erred in finding that the Appellee, their primary creditor, held a valid lien over the proceeds of their brokerage account. As this is a procedurally complex case, a wide variety of issues were presented to the court. The dispositive inquiry, however, concerns whether the district court correctly ruled that the Appellants failed to intervene properly in the bankruptcy court adversary proceeding, and hence lack standing to prosecute this appeal. Because we agree that the Appellants cannot satisfy the requirements for intervention as of right, we affirm the district court's ruling.

I.

This present action arose out of a loan dispute in which Edward and Ilene Richman, the Appellants, allegedly consented to the placing of a lien on their brokerage account with Shearson Lehman Brothers, Inc. ("Shearson Account") in favor of the First Woman's Bank ("FWB"), the Appellee. The long and detailed procedural history of the case is summarized as follows.

The dispute first reached the court system when FWB instituted a collection action in the Circuit Court of Montgomery County, Maryland ("state court action"), on January 28, 1992. The state court tentatively accepted FWB's arguments that the Richmans were dissipating the Shearson Account and granted the bank's request for an attachment before judgment. The Richmans filed a Voluntary Petition under

2

Chapter 11 of the Bankruptcy Code on May 29, 1992, and the state court action was stayed. On September 3, 1992, FWB filed an adversary proceeding in bankruptcy court, which raised essentially the same issues the bank had raised in the state court action, and sought a declaration from the bankruptcy court that the Richmans' debt was nondischargeable. On April 22, 1993, Bankruptcy Judge Derby, orally ruling on the Richmans' motion for summary judgment, declined to address certain fraud claims raised by the Richmans, instead deferring to the state court the question of whether the lien on the Shearson Account had been procured through fraudulent inducement. Judge Derby's written order on this matter was entered April 25, 1993.

The Richmans filed a Turnover Action on April 23, 1993, seeking release of the proceeds of the Shearson Account. The Richmans subsequently filed another motion for summary judgment in June, 1993, on the grounds that Judge Derby's order of April 22, 1993, found no fraud on their part to support an attachment before judgment. FWB then cross-moved for summary judgment, alleging, inter alia, that it had a consensual lien on the Shearson Account. On February 23, 1994, Judge Derby ruled on the cross-motions for summary judgment, and again deferred to the state court action and abstained from ruling on the Richmans' allegation of fraudulent inducement.

At a hearing on August 15, 1994, the Richmans' Chapter 11 proceeding was converted to Chapter 7. On April 21, 1995, Judge Keir of the bankruptcy court issued a ruling on the Turnover Action ("Lien Order"). In the Lien Order, Judge Keir, who did not expressly make any findings regarding the fraudulent inducement issue, nevertheless granted FWB's motion for summary judgment, thus implicitly ruling that FWB had acquired a consensual lien on the Shearson Account. On May 4, 1995, the Richmans filed a Motion for Reconsideration of Lien Order, which the bankruptcy court treated as a post-judgment motion under Federal Bankruptcy Rule 9024. Judge Keir denied the Richmans' motion on July 21, 1995, holding, inter alia, that the Richmans (as well as the law firm of Gordon & Simmons, the only other movant) lacked standing to seek reconsideration, primarily because after the conversion from a Chapter 11 to a Chapter 7 proceeding, the Trustee was "the substituted plaintiff entitled to prosecute this turnover action . . . ." ("Reconsideration Opinion").

3

On July 31, 1995, the Richmans then moved to intervene as a matter of right for the purposes of appealing the Lien Order, but in an October 31, 1995 order, the district court, sitting as an appellate court over the bankruptcy proceeding, rejected the Richmans' Motion to Intervene. On November 30, 1995, the district court ruled on the issue of whether the bankruptcy court had abused its discretion in refusing to grant the Richmans' Motion for Reconsideration of the Lien Order, finding that it had not.

II.

The threshold question on appeal is whether the Richmans satisfy the requirements for intervention, and thus whether they may participate as a matter of right in the Turnover Action to challenge the Lien Order and for purposes of appeal to the district court and to this court. This question involves issues of both law and fact. We review the lower court's legal conclusions de novo, and reverse its findings of fact only if clearly erroneous. E.g., In re Varat Enterprises, Inc., 81 F.3d 1310, 1314 (4th Cir. 1996); In re Stanley , 66 F.3d 664, 667 (4th Cir. 1995).

Courts consistently have noted a public policy interest in reducing the number of ancillary suits that can be brought in the bankruptcy context so as to advance the swift and efficient administration of the bankrupt's estate. This goal is achieved primarily by narrowly defining who has standing in a bankruptcy proceeding. See, e.g., In re Schultz Mfg. Fabricating Co., 956 F.2d 686, 689-90 (7th Cir. 1992) (observing that, because the Chapter 7 debtor lacked standing, the court could not review the merits of the bankruptcy court's orders); Hancock Bank v. Jefferson, 73 B.R. 183, 185 (S.D. Miss. 1986) (noting that the court has no jurisdiction to hear a claim if the litigant lacks standing to prosecute the appeal). As a general matter, in a Chapter 7 proceeding, the trustee alone has standing to raise issues before the bankruptcy court and to prosecute appeals. A trustee is the representative of the bankrupt's estate and has the capacity to sue or be sued. 11 U.S.C. § 323; In re Eisen, 31 F.3d 1447, 1451 n.2 (9th Cir. 1994). Once appointed, the trustee becomes the estate's "proper party in interest, and the only party with standing to appeal the bankruptcy court's order." Eisen, 31 F.3d at 1451 n.2 (quoting Hancock, 73 B.R. at 185); see also Stanley v. Sherwin-Williams Co., 156 B.R.

4

25, 26 (W.D. Va. 1993) (preventing a Chapter 7 debtor from litigating a cause of action which belonged to the estate on the grounds that the debtor "lacks standing because the cause of action is [no longer] his to assert").[1]

In certain instances, courts relax the general rule that only the Chapter 7 trustee has standing before the bankruptcy court and grant standing to certain other interested parties. Courts should be chary about granting such dispensations, however, as lax rules which liberally allow parties with some interest in the bankruptcy proceeding, such as a Chapter 7 debtor, to contest a proposed course of action, or to appeal an adverse decision, are too likely to generate "protracted litigation" that ultimately serves the interests of neither the debtor's estate nor the creditors. See In re Thompson, 965 F.2d 1136, 1145-46 (1st Cir. 1992). Stricter rules, on the other hand, have the salutary effects of advancing the estate's "timely administration," In re Bowman, 181 B.R. 836, 844 (Bankr. D. Md. 1995), and shielding the courts from "the needless multiplication of lawsuits." In re Wells, 575 F.2d 329, 331 (1st Cir. 1978); see McGuirl v. White, 86 F.3d 1232, 1235 (D.C. Cir. 1996) (discussing the need to avoid"overwhelm[ing] bankruptcy courts with claims by the many parties indirectly affected by bankruptcy court orders").

The Richmans argue that they have standing to contest the bank-

---

[1] As the bankruptcy court correctly concluded in the Reconsideration Opinion,

> [p]rior to conversion, the debtors were debtors-in-possession and held the powers of a trustee including powers under 11 U.S.C. § 542 for turnover of property of the estate. 11 U.S.C. § 1107. Upon conversion to Chapter 7 and the appointment of the trustee, the debtors lost their rights to prosecute this action. The trustee became the sole representative of the estate, 11 U.S.C. § 323(a), and succeeded to those causes of action which were property of the estate, including the turnover action for the Shearson account. One of the trustee's enumerated duties is to collect and reduce to money the property of the estate for which the trustee serves.

J.A. 506.

5

ruptcy court's actions because they qualify as "parties in interest."[2] The debtors seem to have concluded that the mere fact of being a party in interest would grant them an automatic right to intervene, and hence participate as a matter of right, in the adversary proceeding. Even if the Richmans are correct in arguing that they are "parties in interest," that status does not guarantee that they have a right to intervene, either in the Turnover Action or for the purposes of appeal.[3] Rather, while a "party in interest" may have standing to intervene, the party with the interest must still separately satisfy the requirements for intervention in order to participate in an adversary proceeding. Although this court has not directly addressed the issue of whether a "party in interest" has an automatic right to intervene, other circuits have debated the similar question of whether a "party in interest," as that term is used in 11 U.S.C. § 1109(b), must still formally intervene to participate in an adversary proceeding.[4]

_____

[2] The "party in interest" test asks whether the debtor should be allowed to contest a proposed course of action before the bankruptcy court itself. This inquiry grants standing to certain persons who are "parties in interest." This terminology derives from section 502 of the bankruptcy code, which provides that claims against an estate are allowed unless a "party in interest" objects. 11 U.S.C. § 502(a); see, e.g., Caserta v. Tobin 175 B.R. 773, 774 (S.D. Fla. 1994). This court in Willemain v. Kivitz, 764 F.2d 1019 (4th Cir. 1985), relying on "party in interest" cases, held that a Chapter 7 debtor lacked standing to challenge the commercial reasonableness of a trustee's proposed sale of the estate's primary asset because the debtor failed to show that an alternative sale of the property would create any surplus for the estate. See McGuirl , 86 F.3d at 1234; In re F.A. Dellastatious, Inc., 121 B.R. 487, 490 (Bankr. E.D. Va. 1990) (two cases discussing Willemain's "party in interest" standing analysis). The holding in Willemain thereby extends section 502"party in interest" analysis to other contexts, namely the Chapter 7 arena. Id.

In the case at bar, the Richmans note that their estate may have a surplus, if the proceeds of the Shearson account are awarded to them, and argue that because of this surplus they are "parties in interest."

[3] Because we ultimately find that the Richmans do not satisfy the requirements for intervention, we need not determine whether they are "parties in interest."

[4] Section 1109 of Chapter 11 provides in pertinent part:

> [a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, and

6

In Fuel Oil Supply and Terminating v. Gulf Oil Corp., 762 F.2d 1283 (5th Cir. 1985), the Fifth Circuit rejected the argument that a Chapter 11 creditors' committee, which qualified as a "party in interest" under section 1109(b), thereby gained an absolute right to intervene in an adversary proceeding to set aside a preferential transfer. Id. at 1284; see In re Charter Co., 876 F.2d 866, 871 (11th Cir. 1989) (paraphrasing Fuel Oil's holding). Instead, the court in Fuel Oil determined that a "party in interest" must still satisfy the intervention requirements of Bankruptcy Rule 7024 and Rule 24(a)(2) of the Federal Rules of Civil Procedure. 762 F.2d at 1287. The court explained that this tougher standard was necessary as a means to protect the bankruptcy court from being overwhelmed by a flood of "automatic parties." Id. By adopting this more restrictive approach to intervention, the court permitted the bankruptcy court "to control the proceeding by restricting intervention to those persons whose interests in the outcome of the proceeding are not already adequately represented by existing parties." Id.

We find the logic of Fuel Oil persuasive, and believe that its Chapter 11 analysis is clearly analogous and applicable to the same issue in this Chapter 7 proceeding. A Chapter 7 liquidation certainly has the same need for efficiency and the orderly administration of the bankrupt's estate as a Chapter 11 proceeding. Therefore, we conclude that the Fuel Oil approach, in which "applications to raise any issue and be heard are governed by" the intervention requirements of the federal rules, Charter Co., 876 F.2d at 871, should apply with equal force in the setting of the Richmans' Chapter 7 adversary proceeding.

Thus, whether the Richmans might otherwise be found to possess "party in interest" standing, they do not have the right to participate in the Turnover Action or appeal the Lien Order, if they have not intervened properly pursuant to Bankruptcy Rule 7024 and Federal Rule of Civil Procedure 24(a)(2). Moreover, a would-be intervenor bears the burden of demonstrating to the court a right to intervene. In re Kaiser Steel Corp., 998 F.2d 783, 790 (10th Cir. 1993).

_____

equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

11 U.S.C. § 1109(b).

III.

In this case, the Richmans made no attempt to intervene until after the bankruptcy court denied their Motion for Reconsideration of the Lien Order. In its July 21, 1995 Reconsideration Opinion, the bankruptcy court noted that it could not "entertain the debtors' request for post-judgment relief." Despite the Richmans' interest in the outcome, "[s]uch interest alone is insufficient. Apparently, the debtors chose not to seek the status of parties in the action, having failed to file any motion for . . . intervention." In an attempt to rectify this shortcoming, the Richmans then filed a motion to intervene as a matter of right for the purposes of appeal to the district court pursuant to Federal Rule of Civil Procedure 24 and Bankruptcy Rule 7024. In their intervention motion, filed on July 31, 1995, the Richmans contended that they had a right to intervene because they stood to recover the potential surplus in the estate following satisfaction of claims.

We now consider whether the Richmans can make out a case for intervention as of right. A showing of intervention as of right affords the intervenor with appellate standing, and is thus vitally important. "While `one who is not an original party to a lawsuit may of course become a party by intervention . . . one who is not a party . . . has no right to appeal.'" Thompson, 965 F.2d at 1141 (quoting Karcher v. May, 484 U.S. 72, 77 (1987)). Because we find that they cannot make out a case for intervention as of right, the Richmans are not parties to the underlying action below, and hence had no automatic right to participate in the adversary proceeding or appeal the Lien Order.**5**

_____

**5** By order of October 31, 1995, the district court denied the Richmans' motion to intervene to appeal the Lien Order for a variety of reasons, one of the grounds being that it had not been filed in a timely manner under Bankruptcy Rule 8002, which requires that motions to appeal must be filed "within 10 days of the date on the entry of the judgment, order, or decree appealed from." Fed. Bankr. R. 8002(a).

On May 4, 1995, the Richmans filed a timely Motion to Reconsider the Lien Order of April 21, 1995, under Bankruptcy Rule 9024. The bankruptcy court issued its ruling on this Motion to Reconsider on July 21, 1995. The Richmans then moved to intervene for purposes of appealing the Lien Order on July 31, 1995. Given the circumstances, it appears that the debtors' intervention motion for purposes of appeal was timely under Bankruptcy Rule 8002, because their Motion to Reconsider stayed the ten-day time period to appeal the Lien Order until July 21, 1995, when the order denying their Motion to Reconsider was filed.

The Richmans fail to satisfy the intervention requirements of Bankruptcy Rule 7024, which directs that the right to intervene in the bankruptcy context is governed by Rule 24 of the Federal Rules of Civil Procedure.**6** See Kaiser Steel, 998 F.2d at 790; Thompson, 965 F.2d at 1141. An intervenor in this context under Rule 24(a)(2) must then satisfy four requirements.**7** First, the intervenor must submit a timely motion to intervene in the adversary proceeding. Second, he must demonstrate a "direct and substantial interest" in the property or transaction. Third, he has to prove that the interest would be impaired if intervention was not allowed. Finally, he must establish that the interest is inadequately represented by existing parties. Fed. R. Civ. P. 24(a)(2); Kaiser Steel, 998 F.2d at 790; Thompson, 965 F.2d at 1142; Merritt Commercial Sav. & Loan, Inc. v. Guinee, 766 F.2d 850, 853 (4th Cir. 1985). In this case, the Richmans clearly run afoul of requirements one and four.

As a preliminary matter, the Richmans failed to submit a timely motion to intervene in the bankruptcy proceeding, namely the Turn-

_____

**6** Bankruptcy Rule 7024, Intervention, states that "Rule 24 F.R.Civ.P. applies in adversary proceedings." Fed. R. Bankr. P. 7024.
**7** To intervene of right, Rule 24 provides in pertinent part:

> Upon timely application anyone shall be permitted to intervene in an action: . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2) (emphasis added). The other sections of Rule 24 are inapplicable in this Chapter 7 bankruptcy context, namely no "statute of the United States confers an unconditional right to intervene," Fed. R. Civ. P. 24(a)(1), or a "conditional right to intervene," Fed. R. Civ. P. 24(b)(1). Permissive intervention under Rule 24(b)(2) is not an issue, as the Richmans moved to intervene of right. More importantly, by the very nature of a Chapter 7 proceeding, the Trustee has taken over the applicant's "claim or defense" in "the main action" for purposes of section 24(b)(2) permissive intervention, thereby leaving the applicant to intervene of right under section 24(a)(2) on the basis that the applicant's interest is not adequately represented by the Trustee.

9

over Action.**8** In order to prove that the party sought to intervene in the bankruptcy court, the intervenor must prove some formal attempt to intervene. "Mere participation" in a hearing before the bankruptcy court "does not constitute de facto intervention." Thompson, 965 F.2d at 1141-42 (fact that appellants were given an opportunity to be heard in the bankruptcy court does not provide basis for intervention to appeal). As a courtesy, the bankruptcy court allowed the Richmans to appear before it and present arguments during the Turnover Action. However, this informal participation does not satisfy the need for formal intervention. In its July 21, 1995 Reconsideration Opinion, the bankruptcy court specifically noted the Richmans' failure to file any motion to intervene. The Richmans only belatedly attempted to correct their earlier lapse by moving to intervene as a matter of right for the purposes of appeal on July 31, 1995. This late filing, however, is insufficient for intervention purposes.**9**

The Richmans also fail to satisfy the requirements for intervention because of their inability to establish that whatever interest they may have possessed in the Shearson Account was inadequately represented by the bankruptcy trustee. The court in Thompson noted that, not only does the burden of demonstrating inadequate representation rest on the putative intervenor, but that the burden "is at its most onerous" where an existing party is under a legal obligation to represent the would-be intervenor's interest. Thompson, 965 F.2d at 1142. In such a situation, there must be a "compelling showing of inadequate representation." Id. (emphasis in original) (quoting 9 Lawrence D. King, Collier on Bankruptcy ¶ 7024.05 (15th ed. 1991)).

In this case, the Richmans pin their hopes on the fact that a surplus in the Chapter 7 estate might accrue, if they were awarded the proceeds of the Shearson Account. This surplus, they argue, is the interest which warrants their intervention. However, the Richmans fail to make any showing whatsoever that this interest was inadequately represented by the Chapter 7 trustee. In its October 31, 1996 order, the

_____

**8** This timeliness inquiry is distinct from the issue of whether the Richmans' motion to intervene for purposes of appealing the Lien Order was timely pursuant to the ten-day rule of Bankruptcy Rule 8002. See supra note 5.

**9 See supra** notes 5 and 8.

10

district court found as a fact that the trustee did provide adequate representation in the Turnover Action. The Richmans submitted no evidence to the contrary, and thus have offered no justification for disturbing this factual finding. As a result, they are unable to meet their burden of demonstrating inadequate representation by an existing party to the action, namely the trustee for the Richmans' Chapter 7 bankruptcy proceeding.

We conclude that the Richmans do not satisfy the requirements for intervention as of right. Accordingly, the district court acted appropriately in denying their motion. For the reasons stated above, the district court's opinion is

AFFIRMED.

11