**UNITED STATES of America,
Plaintiff,**

v.

**B.C. ENTERPRISES, INC. d/b/a/ Aristocrat Towing; and Aristocrat Towing, Inc.,; and Earnest A. Cooper, Jr., Defendants.**

**Civ. No. 2:08cv590.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Nov. 6, 2009.

Kevin J. Mikolashek, United States Attorney's Office, Alexandria, VA, Amber Rachelle Standrldge, United States Department of Justice, Washington, DC, for Plaintiff.

Robert Greenway Byrum, Shames & Byrum, Chesapeake, VA, S. Lawrence

Dumville, Norris & St. Clair PC, Virginia Beach, VA, for Defendants.

### ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO INTERVENE

ROBERT G. DOUMAR, District Judge.

This matter comes before the Court on cross-motions for summary judgment and a motion to intervene. The facts of this case are largely undisputed. Defendant B.C. Enterprises, Inc., Defendant Aristocrat Towing, Inc., and Defendant Earnest A. Cooper, Jr., (collectively, "Defendants") sold at least twenty vehicles owned by active-duty servicemembers at auction between 2004 and 2009. (United States' Mem. Supp. Mot. Partial Summ. J. 2). These sales were conducted without a court order. (*Id.* at 2–3; Cooper Dep. 67–68).

Section 537(a)(1) of the Servicemembers Civil Relief Act (SCRA) provides that

A person holding a lien on the property or effects of a servicemember may not, during any period of military service of the servicemember and for 90 days thereafter, foreclose or enforce any lien on such property or effects without a court order granted before foreclosure or enforcement.

50 U.S.C. app. § 537(a)(1). The United States has filed suit against Defendants on behalf of the active-duty servicemembers whose vehicles were sold, alleging that Defendants conducted these auctions in violation of § 537(a)(1). The United States seeks an award of damages to each "identifiable victim of Defendants' violation of the SCRA," as well as declaratory and injunctive relief. (Compl. ¶ 15).

Defendant Earnest A. Cooper, Jr. ("Cooper"), the manager of Defendant B.C. Enterprises, Inc. ("B.C. Enterprises") and Defendant Aristocrat Towing, Inc.

("Aristocrat"), moved for summary judgment on August 31, 2009. The parties completed briefing on this motion on September 22, 2009.

Defendants filed a separate motion for partial summary judgment on September 3, 2009. This motion seeks to dismiss the United States' claims on behalf of servicemembers identified after the filing of the Complaint, as well as the United States' claim for injunctive relief. The parties completed briefing on this motion on October 9, 2009.

The United States moved for partial summary judgment in its favor on September 17, 2009. The United States' motion requests entry of summary judgment against Defendants with respect to liability. The parties completed briefing on this motion on October 7, 2009.

On October 13, 2009, while the parties' cross-motions for summary judgment were pending, Peninsula Insurance Company ("Peninsula") filed a Motion to Intervene and a Complaint for Temporary Stay. Peninsula is the insurer of Defendants, and has represented Defendants in the proceedings thus far. The parties completed briefing on this Motion on November 2, 2009.

For the reasons set forth more fully below, the Court finds that Peninsula's interests in the pending motions for summary judgment are adequately represented by Defendants. The Court further finds that Peninsula's coverage defenses do not share a common question of law or fact with the dispute presently before the Court. Accordingly, Peninsula's Complaint for Temporary Stay and Motion to Intervene are **DENIED** at this time.

Based on the text of the SCRA and applicable precedent, the Court finds that the United States' allegations against Cooper do not state a cause of action for a

violation of § 537(a)(1) of the SCRA. Cooper is not a "person holding a lien on the property or effects of a servicemember" within the meaning of § 537(a)(1), and thus his conduct cannot constitute a violation of that statutory provision. Therefore, Cooper's Motion for Summary Judgment is **GRANTED.**

Turning to Defendants' Motion for Partial Summary Judgment, the Court rejects Defendants' argument that the United States has not adequately identified the victims of Defendants' actions or set forth sufficient evidence of damages. Thus, the United States claims for compensatory damages may proceed. The Court agrees with Defendants, however, that injunctive relief is unnecessary under the circumstances. Accordingly, Defendants' Motion for Partial Summary Judgment is **DENIED IN PART, GRANTED IN PART.**

With regard to the United States' Motion for Partial Summary Judgment, the Court finds that the undisputed facts in this case establish violations of the SCRA, and that B.C. Enterprises and Aristocrat are liable for such violations. While compliance with § 537(a)(1) may be burdensome or even impractical in certain cases, Congress has chosen to impose strict liability for violations of this statutory provision. As discussed above, however, the United States has not demonstrated the need for injunctive relief at this stage or stated a claim against Cooper. Therefore, the United States' Motion for Partial Summary Judgment is **GRANTED IN PART, DENIED IN PART.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

Navy Lieutenant Yahya Jaboori was deployed to Iraq on March 28, 2007. At the time of his deployment, a 1991 Acura registered in Lieutenant Jaboori's name was parked in a Virginia Beach apartment complex. In early June of 2007, Defendants towed Lieutenant Jaboori's car. On July 28, 2007, Defendants sold the Acura at an auction without a court order. Although there is no direct evidence that Cooper conducted this auction on July 28, 2007, one of Defendants' former employees has testified that "Mr. Cooper always ran the auction." (Fritz Dep. 52).

The United States filed suit against Cooper and B.C. Enterprises on December 10, 2008. In the Complaint, the United States alleges that Cooper and B.C. Enterprises' sale of Lieutenant Jaboori's vehicle was in violation of the Servicemembers Civil Relief Act (SCRA), 50 U.S.C. app. § 537(a)(1). In ¶ 14 of the Complaint, the United States further states as follows:

Upon information and belief, Defendants may have injured other servicemembers by enforcing storage liens on the vehicles of servicemembers without court orders, in violation of the SCRA. Any such aggrieved persons may have suffered damages as a result of Defendants's conduct.[1]

(Compl. ¶ 14). On November 2, 2009, the United States amended its Complaint to add Aristocrat as a Defendant. The United States seeks an award of damages for "each identifiable victim" of Defendants' SCRA violations, as well as injunctive and declaratory relief. (Compl. 3).

Through discovery, the United States identified at least twenty servicemembers allegedly injured by Defendants' conduct. The parties agree that "Defendants have enforced storage liens on at least twenty vehicles without court orders while the record owner or owners were serving on active duty." (United States' Mem. Supp. Mot. Partial Summ. J. 21: *see also* Def.'s

1. The "Defendants" referenced in the initial complaint are Cooper and B.C. Enterprises.

Resp. Br. in Opp'n to Pl. United States' Mot. Partial Summ. J. 2–4). On August 6, 2009, Defendants filed a motion *in limine* seeking to exclude evidence concerning some of these servicemembers on the basis of the United States' alleged failure to provide information required by Rule 26(a) and other supposed discovery violations. The Court denied this motion on September 18, 2009.

Cooper moved for summary judgment on August 31, 2009. The parties completed briefing on this motion on September 22, 2009. Defendants filed a separate motion for partial summary judgment on September 3, 2009. The parties completed briefing on this motion on October 9, 2009. The United States moved for partial summary judgment in its favor on September 17, 2009. The parties completed briefing on this motion on October 7, 2009. On October 13, 2009, while the parties' cross-motions for summary judgment were pending, Peninsula filed a Motion to Intervene and a Complaint for Temporary Stay. The parties completed briefing on this motion on November 2, 2009.

## II. PENINSULA'S MOTION TO INTERVENE

The Court will address Peninsula' Motion to Intervene and Complaint for Temporary Stay first, since Peninsula's Motion to Intervene requests a stay of the pending motions for summary judgment. Peninsula argues that it is entitled to intervention of right or, alternatively, that the Court should grant it permission to intervene in the action pursuant to Rule 24(b).

Intervention is governed by Federal Rule of Civil Procedure 24. Rule 24(a) permits a party to intervene as of right under certain conditions. It provides as follows:

> **Intervention of Right.** On timely motion, the court must permit anyone to intervene who ... (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

A party seeking to intervene as of right must satisfy four requirements:

> First, the intervenor must submit a timely motion to intervene in the adversary proceeding. Second, he must demonstrate a "direct and substantial interest" in the property or transaction. Third, he has to prove that the interest would be impaired if intervention was not allowed. Finally, he must establish that the interest is inadequately represented by existing parties.

*Richman v. First Woman's Bank (Matter of Richman)*, 104 F.3d 654, 659 (4th Cir. 1997); *see also First Penn–Pacific Life Ins. Co. v. William R. Evans, Chartered*, 200 F.R.D. 532, 536–37 (D.Md.2001) (mem.).

As an alternative to intervention of right, a party may move for permissive intervention pursuant to Rule 24(b). Rule 24(b) provides that "[o]n timely motion, the court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact." In exercising its discretion, the court must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights. FED. R.CIV.P. 24(b)(3).

Peninsula was notified of the suit against Defendants on April 7, 2009, and has conducted the defense of Defendants under a Reservation of Rights letter. On August 31, 2009, Peninsula filed an action seeking declaratory relief releasing it from its obligations to represent Defendants,

That action is currently pending before Judge Friedman. *See Peninsula Ins. Co. v. B.C. Enterprises,* No. 2:09cv473 (E.D. Va. filed Sept. 24, 2009).[2] The present motion to intervene was filed on October 13, 2009, shortly after the parties completed briefing on the pending motions for summary judgment.

Peninsula argues that it is entitled to intervene as of right because it meets the four factors set forth in *Richman.* Specifically, Peninsula argues that its intervention is timely and will not disrupt the case; that it has an interest in determining the scope of its coverage before advancing attorney's fees for the defense of the case; that disposition of the present action would put it at a practical disadvantage in protecting its interest; and that Defendants cannot reasonably be expected to protect Peninsula's interest in determining coverage obligations. Peninsula relies heavily on *United States v. Thorson,* a case in which a district court granted an insurer leave to intervene in an underlying tort dispute between its insured and the United States. 219 F.R.D. 623 (W.D.Wisc.2003).

Although Peninsula frames the issue in terms of its right to intervene in the case as a whole, the more relevant question for present purposes is whether Peninsula has a right to intervene before the Court rules on the pending motions for summary judgment. The Court reserves ruling on the question whether Peninsula has a right to intervene in later proceedings in this matter. Considering Peninsula's Motion in the context of the pending motions for summary judgment, the Court finds that Peninsula has not satisfied the four requirements set forth in *Richman,* and its Motion to Intervene must be denied at this time.

■ Peninsula has two possible interests in this stage of the proceeding. First, Peninsula claims an interest in resolving its coverage obligations before advancing attorney's fees on Defendants' behalf. Second, Peninsula has an interest in avoiding liability for the Defendants, because Peninsula may be contractually obligated to satisfy any judgment against them. The former interest will not be impaired if intervention is denied, and the latter interest is adequately represented by the present parties to the suit.

Although Peninsula arguably has an interest in resolving its coverage obligations before advancing further attorney's fees on Defendants' behalf, this interest will not be impaired by a ruling on the pending motions for summary judgment. The motions for summary judgment have been fully briefed, and are ripe for decision by this Court. Peninsula has already advanced attorney's fees and costs in pursuing these motions. Thus, a ruling on these motions will in no way impair Peninsula's interest in avoiding further costs.

■ While Peninsula also has an interest in avoiding liability for Defendant's conduct, Defendants share this same interest. "When the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance." *Virginia v. Westinghouse Elec. Corp.,* 542 F.2d 214, 216 (4th Cir.1976). Peninsula has offered no evidence to rebut this presumption. Indeed, Peninsula has managed the representation of Defendants in the present action. Under these circumstances, Peninsula cannot argue that its interest in

---

**2.** To avoid potential conflicts of interest, Peninsula has retained separate counsel for the

proceedings before this Court and the proceedings before Judge Friedman.

shielding Defendants from liability has not been adequately represented. *See id.* (where party seeking to intervene filed nearly identical pleadings to those submitted by party to suit, it is "difficult" to find inadequate representation).

■ Turning to Peninsula's argument that it is entitled to permissive intervention, a party seeking to intervene under Rule 24(b) must demonstrate a "claim or defense that shares with the main action a common question of law or fact." FED. R.CIV.P. 24(b)(1). Courts have consistently held that "[w]here a proposed intervenor has only a contingent financial interest in a declaratory judgment action to establish insurance coverage, he/she cannot accurately claim that there are common questions of law or fact." *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 227–28 (3rd Cir.2005); *see, e.g., Mount Hawley Ins. Co. v. Sandy Lake Props.*, 425 F.3d 1308, 1311 (11th Cir.2005) ("The issue of insurance coverage is unrelated to the issue of fault in the wrongful death action."); *Seneca Ins. Co. v. Lexington & Concord Search & Abstract, LLC*, 484 F.Supp.2d 374, 380 (E.D.Pa.2007). In accord with this precedent, the Court finds that there is no common question of law or fact between Peninsula's coverage claims and the underlying dispute between the United States and Defendants. The question of whether Defendants are liable for SCRA violations is entirely distinct from the question whether, if so, Peninsula is responsible for payment of the judgment against Defendants.

Because Peninsula lacks a distinct and unrepresented interest that will be impaired by a ruling on the pending motions for summary judgment, it is not entitled to intervention as right under Rule 24(a). Similarly, because Peninsula's coverage defenses do not share a common question of law or fact with the underlying dispute between the United States and Defendants, it does not qualify for permissive intervention. Therefore, Peninsula's Motion to Intervene and Complaint for a Stay are hereby **DENIED** at this time.[3]

## III. COOPER'S MOTION FOR SUMMARY JUDGMENT

■ At all relevant times, Defendant Earnest A. Cooper, Jr. ("Cooper") served as the general manager of B.C. Enterprises and Aristocrat, the corporate Defendants in this action. (Rebuttal Brief in Supp. Mot. Summ. J. of Earnest A. Cooper, Jr. 1). The United States claims that Cooper directly supervised and directed the sale of servicemembers' vehicles at auction. The United States has produced evidence of Cooper's direct involvement in the sale of servicemembers' vehicles, including testimony by one of Cooper's former employees that "Mr. Cooper always ran the auction." (Fritz. Dep. 52).

Cooper's defense centers on the statutory text of the SCRA.[4] Section 537(a)(1) of

---

3. The Court expresses no opinion on whether Peninsula's interest in resolving its coverage obligations is sufficient to support intervention in subsequent proceedings in this matter. The Court's holding is based, in part, on the fact that Peninsula has already advanced attorney's fees for the pending motions for summary judgment. Peninsula may renew its motion to intervene before advancing any further fees or costs on Defendants' behalf. The Court also reserves ruling, however, on other possible barriers to Peninsula's intervention, including the question of whether the motion to intervene was untimely.

4. Cooper also presents a factual argument in his defense, arguing that "plaintiff has failed to elicit any testimony that Cooper personally engaged in conduct which violated the rights of any servicemember under the SCRA." (Mem. Supp. Summ. J. by Def. Earnest A. Cooper, Jr. 5). This claim is flatly contradicted by the record and, to some extent, even by Cooper's own testimony. During his deposi-

the SCRA provides that a "person holding a lien on the property or effects of a servicemember" may not enforce that lien without a court order. 50 U.S.C. app. § 537(a)(1). Cooper argues that he is not a "person holding a lien on the property or effects of a servicemember," because the lien was held by B.C. Enterprises.[5] (Rebuttal Brief in Supp. Mot. Summ. J. of Earnest A. Cooper, Jr. 2). The question, therefore, is whether Cooper is liable under the SCRA for taking action to enforce a lien held by another person. For the reasons set forth below, the Court finds that Cooper is not liable under the SCRA for his actions.

Although this particular issue is a question of first impression, judicial decisions interpreting analogous statutes provide helpful guidance. In *Ryan v. Edwards,* the Fourth Circuit construed a statute providing that "[n]o transferor shall ... give a false statement to a transferee in making any disclosure required by such rule." 592 F.2d 756, 760 (4th Cir.1979) (quoting Motor Vehicle Information and Cost Savings Act, 15 U.S.C. § 1988(a) (repealed 1994)). By regulation, transferor was defined as "any person who transfers his ownership in a motor vehicle...." 49 C.F.R. § 580.3 (1973). The plaintiff in *Ryan* sued a dealership, Tappahannock Ford, and its presi-

dent, John DuVal, claiming that they had sold him a car with a falsified mileage form. The Fourth Circuit held that even though DuVal had personally falsified the form and sold the car, "the sole owner of the vehicle in question was Tappahannock, not DuVal. Therefore, DuVal was not a 'transferor' and is not individually liable under the statute." *Ryan,* 592 F.2d at 762. The Eighth Circuit addressed this same issue, and reached the same conclusion. *Duval v. Midwest Auto City, Inc.,* 578 F.2d 721 (8th Cir.1978).

The Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) contains a similar provision imposing liability on "any person who ... arranged for disposal or treatment ... of hazardous substances *owned or possessed by such person* ...." 42 U.S.C. § 9607(a)(3) (emphasis added). Courts have generally held that officers of a corporation cannot be held liable under this provision unless they own or possess the hazardous substance. *See United States v. Shell Oil Co.,* 294 F.3d 1045, 1058 (9th Cir.2002) ("No court has imposed arranger liability on a party who never owned or possessed and never had any authority or duty to dispose of, the hazardous materials at issue.").[6]

---

tion, Cooper stated that "I've had a little bit of hands-on through the whole process" of enforcing storage liens. (Cooper Dep. 56). Considering the evidence in the light most favorable to the United States, there is at least a genuine issue of material fact as to whether Cooper was directly involved in the enforcement of storage liens against military vehicles. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Because there is evidence of Cooper's direct involvement, there is no need to consider Cooper's argument that he is not vicariously liable under the SCRA. *See* 3A W. FLETCHER, CYCLOPEDIA OF THE LAW OF CORPORATIONS § 1137 (rev. ed. 1994) ("Officers and directors may be held individually liable for personal participation in tortious acts even though per-

formed solely for the benefit of the corporation, and such liability does not require that the 'corporate veil' be pierced." (footnotes omitted)).

**5.** The United States does not dispute that Aristocrat and B.C. Enterprises were the holders of the liens.

**6.** Several decisions have imposed liability on corporate officers based on a finding that the officers exercised constructive possession over the waste. Thus, in *United States v. TIC Inv. Corp.,* 68 F.3d 1082 (8th Cir.1995), the Eighth Circuit found a prestigious corporate officer liable for arranging for the disposal of the corporation's hazardous waste, but it did

In addition to this judicial precedent, other provisions of the SCRA shed light on the meaning of § 537(a)(1) of the SCRA. Section 532 of the SCRA, which deals with installment contracts, provides that "a contract by the servicemember ... may not be rescinded or terminated for a breach of terms ... nor may the property be repossessed for such breach without a court order." 50 U.S.C. app. § 532. Section 532, unlike § 537(a)(1), applies to any person who repossesses property in violation of its provisions. Similarly, § 537(c) provides that any "person who knowingly takes an action contrary to [§ 537(a)(1)], or attempts to do so, shall be" guilty of a misdemeanor. Thus, § 537(c) applies broadly to any person who knowingly enforces a storage lien against a servicemember without court order, without regard to whether that person is the holder of the lien. The contrast between these sections and § 537(a)(1) strongly suggests that Congress did not intend for parties other than lienholders to be liable under § 537(a)(1).

The United States cites *Engstrom v. First Nat'l Bank of Eagle Lake,* 47 F.3d 1459 (5th Cir.1995) for the proposition that non-lienholders can be held liable under the SCRA. Although *Engstrom* did involve a third party taking action in violation of the SCRA, the provision of the SCRA at issue in that case, § 532, broadly stated that "[n]o sale ... shall be valid if made during the period of military service...." 50 U.S.C. app. § 532. Thus, the provision applied to any party making a sale in violation of the SCRA, and was not limited to lienholders. *Engstrom* offers no support for the United States' argument that § 537, which is expressly limited to lien-

holders, applies to Cooper's conduct in the present case.

Based on *Taylor* and the structure of the SCRA, the Court **GRANTS** Cooper's Motion for Summary Judgment. Although officers and directors may generally be held "individually liable for personal participation in tortious acts even though performed solely for the benefit of the corporation," 3A W. FLETCHER, CYCLOPEDIA OF THE LAW OF CORPORATIONS § 1137 (rev. ed. 1994), Cooper's actions were not tortious acts in violation of § 537(a)(1) of the SCRA. Because Cooper was not "a person holding a lien on the property or effects of a servicemember," his conduct in enforcing a storage lien was not in violation of the statute. As the only claim against Cooper is a statutory claim pursuant to § 537(a)(1), the United States' suit against Cooper is hereby dismissed.

## IV. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

■ On September 4, 2009, Defendants moved for summary judgment. Their primary contention is that the United States has failed to "affirmatively establish the identity of any other servicemembers that it alleges, in fact, suffered an injury as a result of the defendants' conduct." (Br. Supp. Defs.' Mot. For Summ. J. 9). They further argue that the United States failed to produce a knowledgeable 30(b)(6) deposition witness on the issue of damages, and that summary judgment should be granted on this ground. (*Id.* at 11).

The United States argues that it has produced extensive proof of damages, including the National Automobile Dealers Association loan values on most of the vehicles auctioned, the auction prices of most of the vehicles, and the appraisal

---

so only because the officer "exercised substantial indirect control over the disposal arrangement." *Id.* at 1089–91. These prece-

dents have no bearing on the present case, since the United States does not argue that Cooper is a constructive lien-holder.

values of these vehicles on Edmunds.com. (United States' Resp. Defs. Mot. Summ. J. 13–14). The United States also notes that it produced two witnesses to establish the victims' identity: Betty Mattice, who testified to DMV's records of vehicles auctioned by the Defendants, and Kris Hoffman, who testified to the military status of the vehicles' owners.

Given the factual evidence produced by the United States, the Court finds no basis for granting Defendants' motion. The United States has produced sufficient evidence to generate a "genuine issue of material fact" concerning the identity of the injured parties and the damages suffered by these victims. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). With regard to the identity of the victims, the United States has produced evidence and witness testimony concerning the identity of the victims, the auctioning of their cars, the active-duty status of these victims, and the prices at which most of the vehicles were sold.[7] Similarly, the United States submitted extensive proof of damages, including auction prices and loan values. The cumulative evidence put forth by the United States is more than sufficient to withstand a motion for summary judgment.[8] Defendants' Motion for Partial Summary Judg-

ment with regard to compensatory damages is hereby **DENIED.**

■ Defendants further argue that "[t]he imposition of injunctive relief is redundant and unnecessary under the circumstances," because compliance with the SCRA is impossible.[9] (Br. Supp. Defs. Mot. For Summ. J. 9). The United States disputes this claim, and argues that compliance is possible.

■ While the United States could be correct that compliance with the SCRA is possible, "[t]he rule is well settled that the extraordinary writ of injunction will not issue for the purpose of punishing past offenses, but will issue only in those cases where the court is convinced that such relief is necessary to prevent future violations." *Walling v. Clinchfield Coal Corp.,* 159 F.2d 395, 399 (4th Cir.1946) (quoting *Walling v. Associated Truck Lines,* 57 F.Supp. 943, 945 (W.D.Mich.1944)). The United States does not allege that Defendants have continued to violate the SCRA since the filling of this suit, or that they would likely do so in the future. Nor does the United States challenge Defendants' contention that the Virginia DMV has recently altered its vehicle database in such a way as to "make it significantly easier for any towing company enforcing a me-

7. The Defendants argue that no "affirmative causal link" can be made between the list of names generated by the DMV and the list of servicemember victims identified by the United States Attorney. The relationship between the DMV's list and the list of victims is obvious, as the list of victims was generated by comparing the individuals identified by the DMV with records of active-duty servicemembers. Contrary to Defendants' assertions, the United States Attorney is not the only witness who could explain this process.

8. The Court will not dismiss the United States' claims as a sanction for alleged Rule 30(b)(6) violations in the context of a Motion for Partial Summary Judgment. *See Aspex*

*Eyewear, Inc. v. United Syntek Corp.,* No. 3:02cv385, 2008 WL 656474 (W.D.N.C. Mar. 7, 2008) ("The Court sees defense counsel's argument as an attempt to bootstrap into the objections [to an order denying summary judgment] a ruling on a non-existent motion for discovery sanctions.").

9. Defendants also move for summary judgment on the grounds that injunctive relief is inappropriate against B.C. Enterprises, because B.C. Enterprises has transferred its operations to Aristocrat Towing, Inc. The United States has since amended its complaint to add Aristocrat Towing, Inc. as a defendant. Thus, this argument is moot.

chanic's or storage lien to comply with the letter of the Servicemembers' Civil Relief Act." (Br. Supp. Defs. Mot. Summ. J. 12). In brief, the United States has failed to rebut the argument that injunctive relief is unnecessary. Accordingly, the Defendants' Motion for Partial Summary Judgment is hereby **GRANTED** with regard to the United States' claim for injunctive relief.

## V. THE UNITED STATE'S MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY

The United States argues that the evidence produced thus far is sufficient to establish liability under § 537(a)(1) of the SCRA. The text of the statute provides:

> A person holding a lien on the property or effects of a servicemember may not, during any period of military service of the servicemember and for 90 days thereafter, foreclose or enforce any lien on such property or effects without a court order granted before foreclosure or enforcement.

50 U.S.C. app. § 537(a)(1). The United States claims that Defendants have, by their own admissions, enforced liens on vehicles without a court order. The United States argues that this is a statutory violation *per se*, and summary judgment as to liability should be granted.

The Defendants challenge this argument on three grounds. First, they assert that "some servicemembers had actual knowledge of the imposition of the lien and potential sale of their vehicle," and that these servicemembers' failure to redeem their vehicles should equitably estop their claims. (Defs.' Resp. Br. Opp. Pl. United States' Mot. Partial Summ. J. 4). Second, they argue that some of the vehicles may have been abandoned, and thus were not "property or effects of a servicemember." (*Id.* at 5). Finally, they argue that con-

struing the SCRA as a strict liability statute will hold them to an "impractical standard," because it is not always possible to determine a vehicle owner's active duty status. (*Id.* at 7–8).

■ Turning first to the Defendant's argument concerning equitable estoppel, the purpose of the SCRA is to "provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service." 50 U.S.C. app. § 502(2). It would contradict the purpose of the statute to require a servicemember to take action to redeem their vehicle, particularly since even a servicemember with notice of the lien might be unable to effectively defend her interests. If, after serving notice on the servicemember, Defendants had sought a court order to enforce their storage lien, the court could "*on its own motion* ... stay the proceeding for a period of time as justice and equity require." *Id.* § 537(b) (emphasis added). Defendants' position would allow lienholders to avoid § 537(b)'s judicial protection by serving notice on a servicemember, effectively side-stepping the provision. Moreover, the servicemembers who received notice of the Defendants' liens were entitled to believe that the Defendants would not enforce these liens without a court order, as required by the SCRA. The servicemembers in this case should not be equitably estopped from bringing their claims simply because they failed to anticipate and guard against the Defendants' unlawful actions.

■ The Defendants' second argument—that the vehicles were abandoned and therefore did not qualify as "personal effects" covered by the SCRA—is incorrect as a matter of Virginia law. Virginia has enacted a statutory framework for the disposition of abandoned motor vehicles. In relevant part, the statute provides that

a person in possession of an abandoned motor vehicle must initiate a search with the DMV for the owner of the vehicle. The DMV must send notice to the vehicle's owner. "Following the notice required in this subsection, if the motor vehicle remains unclaimed, the owner and all persons having security interests in the motor vehicle shall have waived all right, title, and interest in the motor vehicle." VA. STAT. ANN. § 46.2–1202. The Defendants did not pursue this statutory abandonment procedure, and thus cannot claim that the servicemembers waived their interests in their vehicles.

■■■ This leaves the Defendant's third contention—that compliance with the terms of the statute is impractical. Phrased somewhat more differently, this amounts to a claim that § 537 of the SCRA does not impose strict liability. Defendants argue that they exercised due diligence in enforcing their storage liens, and that their exercise of care is a defense to liability. The United States argues that strict liability is the standard, and that Defendants are liable under the statute without regard to their care.

This is a question of first impression. Section 537's civil provision merely states that a "person holding a lien on the property or effects of a servicemember may not" enforce that lien without a court order. It does not speak to the required *mens rea* for civil liability. Section 537's criminal provision, on the other hand, provides that any "person who *knowingly* takes an action contrary to this section" is guilty of a misdemeanor. Presumably, since knowledge is the *mens rea* required for criminal liability, such *mens rea* is not required to establish civil liability. *Cf. United States v. Consolidation Coal Co.*, 504 F.2d 1330, 1334 (6th Cir.1974) ("Obviously, it was not intended that such a violation as would give rise to a civil

penalty should be alternatively a criminal offense."). Whether the standard is negligence, as the Defendants seemingly suggest, or strict liability, as the United States suggests, is a more difficult question.

Precedent in the Fourth Circuit tends to support the United States' position. In *Md. Dep't of Nat. Res. v. Kellum*, a state statute provided that "a person may not destroy, damage, or injure any oyster bar.... Any person who destroys, damages, or injures any oyster bar ... referred to in ... this section is liable to the State in a civil action" 51 F.3d 1220, 1225 (4th Cir.1995) (quoting MD. NAT. RES.CODE. ANN. § 4–1118.1(a)). The Fourth Circuit, without much discussion, stated that "the code section creates strict liability for damage to the oyster bar, as the State maintains." *Id.* Admittedly, the case for strict liability in *Kellum* was stronger than the case for strict liability in the present action, because § 537(a) does not state that any person who enforces a lien contrary to the SCRA "is liable to" the United States. Nevertheless, the similarity between the two statutes suggests that the Fourth Circuit would interpret § 537(a) as a strict liability statute.

Precedent from other jurisdictions also supports the United States' position. In *Hurley v. Deutsche Bank Trust Co.*, a court in the Western District of Michigan stated in dicta that the SCRA does not require notice to a mortgagee seeking to enforce a mortgage. No. 1:08cv361, 2009 WL 701006 (W.D.Mich.2009). *Hurley* dealt with a reservist's protections under the SCRA. Section 516(a) of the SCRA provides that a reservist who is ordered to report for service is entitled to SCRA protections "during the period beginning on the date of the member's receipt of the order...." The district court rejected the argument that the reservist was not enti-

tled to SCRA protections until he sent the mortgagee a copy of his orders, stating that "the operative event for the protections is the *servicemember's*, not the mortgage's, receipt of the orders." *Id.* at *5–6. The court's discussion in *Hurley* was dicta, since there was no question that the mortgagee was aware of the servicemember's active duty status. Nevertheless, the case supports the United States' argument that the SCRA is a strict liability statute.

The Supreme Judicial Court of Massachusetts addressed the issue before the Court more directly, albeit in a decision issued in 1918. In *Hoffman v. Charlestown Five Cents Sav. Bank*, a soldier leaving to fight in World War I conveyed his land to his mother, subject to an oral trust that the land would be the soldier's unless he died in combat. 231 Mass. 324, 121 N.E. 15 (1918). The mortgagee foreclosed on the property, unaware of the oral trust between the soldier and his mother. The Supreme Judicial Court held that this was no defense to a suit under the SCRA, stating as follows:

> The fact of the owner (when he is ascertained) being or not being in the military service of the United States is a fact which it is at least as hard for the mortgagee to find out as it is for the mortgagee to find out who the owner of the property is. Yet without question there is no such limitation as to that fact. When the relief given by clause 3 of section 302 is taken into account the section construed as stated above is not a drastic one. The section does not forbid the foreclosure of mortgages on property owned by persons in the military service of the United States. What the section does forbid is the foreclosure of such a mortgage under a power of sale (contained in it) "unless [the sale under the power is made] upon an order of sale previously granted by the court

> and a return thereto made and approved by the court."

*Id.* at 16.

Finally, the United States' position is supported by the structure of the SCRA. Several provisions of the SCRA require notice to the opposing party before the protections of the SCRA may be invoked. Section 527, for example, limits interest on pre-service loans to servicemembers to 6%—but only if the servicemember provides "to the creditor written notice and a copy of the military orders calling the servicemember to military service...." 50 U.S.C. app. § 527(b)(1). Similarly, § 522 provides for a mandatory ninety-day suspension of a civil action "upon application by the servicemember." 50 U.S.C. app. § 522(b)(1). The absence of a similar notification or application procedure in § 537(a)(1) suggests that Congress intended that subsection to apply without notice to the lienholder.

Defendants do not cite any legal authority in defense of their position, but offer factual evidence to argue that it is impossible to accurately verify a vehicle owner's military status. This argument is flawed in two significant respects. First, although it may be impractical to verify the military status of a vehicle's owner, Defendants offer no evidence to demonstrate that it would be impractical to obtain a court order before selling vehicles. This latter course of action would allow Defendants to comply with the SCRA without placing an impractical burden of ascertaining military status upon them. Second, although the inadvertent sale of servicemembers' vehicles may occasionally be unavoidable, strict liability is "liability that is imposed on an actor apart from ... a breach of a duty to exercise reasonable care, i.e., actionable negligence." W. Page Keeton et al., PROSSER AND KEETON ON THE LAW OF TORTS § 75 at 534 (5th ed. 1984). Thus, even if the Defendants exercised the

utmost care in investigating their victims' military status, they face liability for their actions.

For the above reasons, the Court finds that the undisputed facts in this case establish that Defendant B.C. Enterprises and Defendant Aristocrat Towing are liable for their violations of the SCRA. The United States' Partial Motion for Summary Judgment is hereby **GRANTED** as to liability. Trial in this matter shall continue as scheduled to determine the extent of damages suffered by the servicemembers whose vehicles were towed and sold without court order. For the reasons discussed in Parts III and TV above, however, the United States' Partial Motion for Summary Judgment is hereby **DENIED** as to injunctive relief and as to the liability of Cooper.

## VI. CONCLUSION

For the reasons set forth above, Peninsula's Motion to Intervene and Complaint for Temporary Stay are **DENIED** at this time. Cooper's Motion for Summary Judgment is hereby **GRANTED,** and Cooper is dismissed from the present action. Defendants' Motion for Partial Summary Judgment is hereby **DENIED** as to damages and **GRANTED** as to injunctive relief. The United States' Motion for Partial Summary Judgment is **DENIED** as to injunctive relief and **DENIED** as to Cooper's liability, but is **GRANTED** as to liability on the part of B.C. Enterprises and Aristocrat. Trial in this matter shall continue as scheduled to determine damages.

The Clerk of the Court is **DIRECTED** to transmit a copy of this Order to all counsel of record.

**IT IS SO ORDERED.**